UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11-cv-265-RJC

| | |
|---|---|
| WILLIAM ANDREW LITTLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| SID HARKLEROAD, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Randy Teague. (Doc. No. 45).

**I. BACKGROUND**

A. Procedural Background

Pro se Plaintiff William Andrew Littleton is a North Carolina state court inmate currently incarcerated at Lanesboro Correctional Institution, after having been convicted of first-degree murder in Onslow County on October 12, 2010, and sentenced to life in prison. On June 20, 2011, Plaintiff filed this action under 42 U.S.C. § 1983, naming the following four persons as Defendants: Gerald Branker,[1] Warden of Central Prison at all relevant times; Randy Teague, Assistant Superintendent of Marion Correctional Institution at all relevant times; Robert Lewis, Director of Prisons with the North Carolina Department of Public Safety ("NCDPS") at all relevant times; and Sid Harkleroad, Superintendent of Marion Correctional Institution at all

---

[1] Plaintiff incorrectly named the defendant as "George Branker."

1

relevant times. Plaintiff contends in this action that Defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Marion Correctional Institution in Marion, North Carolina. Plaintiff seeks injunctive relief and compensatory damages.

On January 12, 2012, the Court entered an order on initial review dismissing Gerald Branker as a Defendant and denying Plaintiff's motion for appointment of counsel. (Doc. No. 5). On March 12, 2012, Defendants Harkleroad, Teague, and Lewis filed a motion to dismiss for failure to state a claim. (Doc. No. 19). On August 7, 2012, this Court granted the motion to dismiss as to Defendants Lewis and Harkleroad, but denied the motion as to Defendant Teague. (Doc. No. 29). On August 21, 2012, Defendant Teague filed an answer to the Complaint. (Doc. No. 30). On May 17, 2013, this Court issued a scheduling order requiring the parties to file dispositive motions by October 15, 2013. (Doc. No. 33). On October 29, 2013, after receiving an extension of time, Defendant Teague filed the pending summary judgment motion. (Doc. No. 45). On December 3, 2013, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 53). Plaintiff filed his response on December 12, 2013. (Doc. No. 54).

    B.    <u>Factual Background</u>

        1.    Plaintiff's Allegations

According to Plaintiff, while housed at Marion Correctional Facility, on or about September 22, 2010, prison staff fed him a "harsh and spicy" diet, which caused him to suffer rectal bleeding. (Doc. No. 1 at 3). Plaintiff states that he reported his condition to staff and tried eating a bland diet, but staff continued to add spices to his food. (<u>Id.</u>). Plaintiff further alleges

2

that he is allergic to peanuts and that his allergy is clearly indicated on the front of his medical file. (Id.). Plaintiff alleges that, despite knowledge of Plaintiff's allergy, staff served Plaintiff a peanut butter and jelly sandwich on or about September 29, 2010. (Id.). When Plaintiff reported that he could not eat the sandwich due to his allergy, staff allegedly told Plaintiff to eat the sandwich or go without a meal. (Id.). Plaintiff alleges that he ate the sandwich and then suffered an allergic reaction for which he was taken to Marion County Hospital to be treated. (Id.). Plaintiff alleges that the day after his treatment, prison staff again served Plaintiff peanut butter in an attempt to kill him. (Id.).

As to his allegations against Defendant Teague, Plaintiff claims that he has on two occasions written grievances alleging that Defendant Teague has willfully left information off of his diet plan, which led to Plaintiff being served peanut butter. (Doc. No. 1 at 13). Plaintiff further claims that he is allergic to peanut butter and that Defendant Teague's actions caused Plaintiff to be hospitalized. (Id.). Plaintiff further alleges that Defendant Teague's actions have caused Plaintiff to be served spicy foods which caused Plaintiff rectal bleeding. (Id. at 15). Finally, Plaintiff claims that Defendant Teague knew about his problems, but that "nothing has been done." (Id.).

Additionally, on or about December 4, 2010, Plaintiff suffered a swollen foot and leg. (Id.). Prison staff administered a "test" to Plaintiff, the results of which were normal, and administered him "some meds." (Id.). Plaintiff reports that his leg still hurts because prison staff failed to treat the underlying cause of his condition, which are back problems. (Id.). Plaintiff reports that he has seen an outside physician who performed an MRI on his back and that he needs surgery. (Id.). According to Plaintiff, his nerve is "almost cut completely off" and that, if he does not have surgery soon, he will lose all feeling in his right leg. (Id.). On or about

3

December 19, 2010, Plaintiff suffered swelling in his hand, for which prison staff administered him "non aspirin" but no further medical treatment. (Id.). The next day the swelling in Plaintiff's hand increased and he experienced muscle spasms, which caused him to tear a muscle in his left arm. (Id.). Plaintiff reports that a doctor at Catawba County Hospital told him he was "left too long" before he got any medical treatment. (Id.).

        2.        Defendant Teague's Summary Judgment Materials

Defendant Teague has submitted as part of his summary judgment materials Plaintiff's medical documents, grievances filed by Plaintiff while at Marion, and Teague's own affidavit. See (Doc. No. 47 at 1-8: Teague Affidavit; Doc. No. 47 at 9-93: Exhibits A to M, attached to Teague Affidavit). Defendant Teague has also submitted various correspondence records in which he responded to Plaintiff's multiple complaints in 2010 and 2011. See (Id. at 6-7, ¶¶ 18-19, 20, 21; Id. at 22-55, 77, 81-89). In these correspondence records, Defendant Teague communicated with Plaintiff regarding his medical care and diet, relaying information that was provided to Teague by medical staff or food service management to Plaintiff. (Id.).

Defendant Teague's summary judgment materials show that, while incarcerated at Marion during 2010 and 2011, Plaintiff submitted multiple grievances regarding his medical care and diet. (Doc. No. 47 at 22-63: Exhibits C to I). According to the grievance records, Plaintiff complained on multiple occasions that there were spices in his diet and that he had been served food that caused him medical distress, which according to Plaintiff included rectal bleeding and diverticulitis. (Id.). On each occasion, Unit Management investigated Plaintiff's complaints and, with input from the medical unit and food service management, determined that Plaintiff was receiving the proper medical diet. (Id.). For instance, on December 3, 2010, Marion staff explained to Plaintiff, in response to Grievance 3730H104161, that Plaintiff had been placed on a

4

"MNT #3 (2500 Cal.)" diet by Dr. Hossain at Central Prison on October 13, 2010, before Plaintiff was sent to Marion. (Id. at 25-26). Marion staff further explained that Plaintiff needed to submit a sick call request if he wished to have his diet changed to a "Bland Diet," one of the diets specified in the NCDPS' approved diets for prisoners. (Id. at 25-26; 68). Staff explained to Plaintiff that, if the prison doctor agreed, a dietary assessment would be done and referred to the dietician for approval. (Id. at 25-26). Prison officials subsequently conducted a dietary assessment and Plaintiff was approved for a Bland Diet on January 28, 2011.[2]

On May 31, 2011, in Grievance 3730-H-11-4082, Plaintiff complained that he was not receiving a "Bland Diet" that prison officials had designated for him. (Id. at 47). In response, staff explained that per the NCDPS's policies a Bland Diet is "low in spices," but not devoid of spices. (Id. at 48). With respect to Plaintiff's specific request to be transferred to another prison with a bland diet, staff responded that "[e]very prison in the state is provided with the same recipes and should be serving the same bland diet." (Id.).

On several occasions, Defendant Teague reviewed the response of Unit Management and determined that staff had properly responded to Plaintiff's complaints. (Id.). Specifically, Defendant explained to Plaintiff on numerous occasions that while Plaintiff's diet was low in spices, it was not devoid of spices, and the Bland Diet given to Plaintiff complied with NCDPS' policies and procedures regarding food and nutrition management. Defendant Teague was not involved in the investigations and responses to Plaintiff's injuries when Plaintiff's allegations were directed at Teague. See (Doc. No. 47 at 4, ¶ 15).

Plaintiff also used the grievance procedure to complain regarding his medical care on

---

[2] Plaintiff's diet was changed to MNT3 sometime in July 2011. A Bland Diet was again ordered for Plaintiff on November 15, 2011, in addition to the MNT3 diet. See (Id. at 50; 60; 62; 63; 65; 77; 79; 84; 88).

several occasions. (Id.). According to the grievance records, Plaintiff complained on multiple occasions that he was not seen and/or treated by medical staff. (Id.). On each occasion, Unit Management investigated Plaintiff's complaints and, with input from the medical unit, determined that determined that Plaintiff was routinely being seen by medical staff and was receiving the proper medical care. (Id.). Defendant Teague participated in the review of most of Plaintiff's grievances and in each case he determined that staff had properly responded to Plaintiff's complaints. Defendant Teague did not participate in the investigation of the grievances in which Teague himself was accused of wrongdoing. (Doc. No. 47 at 4-5, ¶¶ 15-16). For instance, in Grievance 3730-H-11-4124, filed on August 9, 2011, Plaintiff complained that Defendant Teague and unit manager Boysworth left out instructions from the medical unit regarding the spices in Plaintiff's diet in his prior grievance. (Doc. No. 47 at 4, ¶ 15; Doc. No. 47 at 52-54). Plaintiff further complained that there were spices in his diet and Plaintiff requested that the spices be removed from his meals. (Id.). Unit Management investigated Plaintiff's complaints and, with input from the medical unit and the unit food service manager, determined that no one on the staff had attempted to hide or omit instructions from the medical unit. (Id.). The response further determined that Plaintiff was receiving the proper medical diet, which had been indicated by medical staff and prepared in accordance with NCDPS' policies and procedures regarding medical diets. (Id.).

## I. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

In Farmer v. Brennan, the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter,

7

and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1992)). This is a low standard, as the Supreme Court emphasized that "[p]rison conditions may be restrictive and even harsh." Id. at 833 (internal quotations omitted). To sustain an Eighth Amendment claim, a prisoner must show (1) that the deprivation was objectively sufficiently serious—that is, the deprivation must be a "denial of the minimal civilized measure of life's necessities" and (2) that the defendant was deliberately indifferent to the prisoner's health or safety. Id. at 834 (internal quotations omitted). Thus, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001). Moreover, to demonstrate supervisory liability under § 1983, Plaintiff would have to show that Defendant Teague had actual or constructive knowledge that his subordinates engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, that his response was inadequate, and that there was a causal link between his inaction and Plaintiff's injury. See Shaw v. Stroud, 13 F.3d 791, 799-800 (4th Cir. 1994).

Plaintiff has not presented evidence on summary judgment raising a genuine issue of material fact as to whether Defendant Teague may be held liable for the unconstitutional conduct of others based on supervisory liability, or based on his own alleged unconstitutional conduct. In response to the summary judgment motion, Plaintiff attached his own affidavit, in which he merely re-asserts his claims; several grievances filed by Plaintiff; correspondence between Plaintiff and Teague that was also submitted by Teague in support of his summary judgment motion; Teague's own narratives of his correspondence with Plaintiff; a daily report while

8

Plaintiff was in segregation; and the NCDPS' food and nutrition policies and procedures. Plaintiff contends in his original allegations and in response to the summary judgment motion that he submitted grievances regarding conduct by Marion staff and that Defendant Teague knew of Plaintiff's condition, but refused to act on Plaintiff's behalf. Defendant Teague admits that Plaintiff has written one grievance regarding him specifically and that Defendant Teague has written Plaintiff on multiple occasions regarding his medical care and/or diet. (Doc. No. 47 at ¶ 15). Thus, it is undisputed that Defendant Teague knew about Plaintiff's complaints. Plaintiff has produced no evidence on summary judgment, however, to show that Teague's subordinates violated Plaintiff's constitutional rights at all, much less that Defendants' conduct was "persuasive or widespread." See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (stating that a plaintiff "ordinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . .").

Nor has Plaintiff raised on summary judgment evidence sufficient to raise a genuine issue of material fact as to whether Defendant Teague himself was deliberately indifferent to Plaintiff's serious medical needs. Rather, the evidence shows that Plaintiff was provided with adequate medical care and with the diet prescribed by his physician, and that Marion prison staff, including Defendant Teague, appropriately responded to Plaintiff's complaints. For each complaint Plaintiff communicated to Defendant Teague or other prison staff regarding his medical care or diet, Defendant Teague answered Plaintiff's complaint, explaining that Plaintiff was being treated in accordance with NCDPS policy and was being provided with medical care. (Doc. No. 47 at 81-89).

Thus, contrary to Plaintiff's allegations, the evidence on summary judgment shows that NCDPS staff thoroughly reviewed and responded to Plaintiff's complaints. (Doc. No. 47 at ¶¶

9

10-16; 18-20). In fact, NCDPS staff reviewed Plaintiff's complaints regarding his medical care and diet and determined that Plaintiff was either not suffering from the conditions he complained about, or that Plaintiff was being provided adequate medical care. (Doc. No. 47 at 76-79; 81-89). For example, Plaintiff claims that Defendant Teague caused him to be served peanut butter and that Plaintiff subsequently had to be hospitalized. (Doc. No. 1 at 13). However, according to the documentation submitted by Defendant Teague, medical staff administered Plaintiff a "RAST test" and Plaintiff tested negatively for a peanut allergy. (Doc. No. 47 at 76-77; 79). Further, while in segregation, Plaintiff was served a diet in accordance with his dietary restrictions. (Id. at 78). Plaintiff's allegations demonstrate, at most, that he disagrees with the diagnosis of NCDPS' medical professionals or NCDPS' policies regarding therapeutic meal preparation. These allegations fail to amount to a serious deprivation of a basic human need, nor do they rise to the level of a constitutional violation.

The Court further notes that, as to Plaintiff's grievance alleging that Defendant Teague withheld information from Marion staff regarding the medical unit's instructions for Plaintiff's diet, staff prison administrators determined that Defendant Teague did not conceal or withhold any information regarding Plaintiff's diet. (Id. at 52-58). Plaintiff has submitted no evidence on summary judgment to show that Defendant Teague withheld any information regarding Plaintiff's diet. Moreover, Defendant Teague was entitled to rely on, and did rely on, the health care providers' expertise regarding Plaintiff's treatment. See Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990).

Finally, in response to the summary judgment motion, Plaintiff complains that Defendants and the hospitals where Plaintiff was treated have refused to provide him with certain medical records that would prove that he suffered from a serious medical need. The Court has

already addressed this issue in response to Plaintiff's prior motions to compel and for subpoena of medical records. As the Court explained in its ordered dated March 5, 2014, Plaintiff did not file his motions seeking discovery of medical records until after the discovery period had already ended, and despite that he had ample time in which to file these motions before the discovery period ended. See (Doc. No. 55). Thus, Plaintiff has not shown that he was deprived of any discovery to which he was entitled.

## IV. CONCLUSION

In sum, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant Teague may be held liable for deliberate indifference to Plaintiff's serious medical needs, and Defendant Teague is therefore entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Teague's Motion for Summary Judgment, (Doc. No. 45), is **GRANTED**, and this action is dismissed with prejudice.

Signed: April 3, 2014

Robert J. Conrad, Jr.
United States District Judge